UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLASSEE DIVISION

**CHRISTINE TAUL**,

    Plaintiff,                                       Case No.: 4:18-cv-498-WS-CAS

  v.

**JIMMY PATRONIS**, in his Individual Capacity,

    Defendant.
_____/

## AMENDED COMPLAINT

COMES NOW, Plaintiff, Christine Taul, by and through undersigned counsel, hereby sues the Defendant, Jimmy Patronis in his individual capacity, and alleges as follows:

## INTRODUCTION

This case concerns retaliation and Florida Chief Financial Officer Jimmy Patronis' denial of continued public employment to former Department of Financial Services Senior Employee Christine Taul for her refusal to attend a campaign fundraiser for Patronis, a superior of Taul at DFS, and her refusal to make a campaign contribution to Patronis. Patronage dismissals, or dismissal for associating with a different political party have violated Federal Constitutional law for decades. The retaliation suffered by Christine Taul is disgraceful and an unequivocal violation of the United States Constitution.

## JURISDICTION AND VENUE

1. This is a constitutional claim brought under 42 U.S.C. § 1983, by and through the Free Speech Clause and Assembly Clause of the First Amendment.

2. Jurisdiction exists pursuant to 28 U.S.C. §1331 and 28 U.S.C. § 1343 based on claims asserted under 42 U.S.C. § 1983 and questions of federal constitutional law.

3. Venue is proper in the Northern District of Florida because the events and acts of misconduct giving rise to this lawsuit occurred within the Northern District of Florida and, specifically, Tallahassee, Florida. *See 28 U.S.C. § 1391(b)(2).*

## THE PARTIES

4. Plaintiff Christine Taul (hereinafter "Plaintiff") is an individual residing in Leon County, Florida. At all times material hereto Ms. Taul was an employee with the Florida Department of Financial Services (hereinafter "DFS"). Plaintiff was the Risk Management Program Administrator since approximately 1994.

5. Defendant Jimmy Patronis is an individual residing in the Northern District of Florida, and, upon information and belief, Tallahassee, Florida. The Defendant is the Chief Financial Officer of the State of Florida and his principal place of business is Tallahassee, Florida.

**Plaintiff was an exceptional employee with DFS no discipline at DFS in her approximately thirty-three year career with DFS**

6.     Plaintiff has worked her entire public career with DFS. Plaintiff worked her way from lower level positions at DFS to one of the most important jobs in DFS and Risk Management, Risk Management Program Administrator.

7.     Plaintiff's job required her to be exposed to very sensitive, but not confidential, information, including claims files for civil rights lawsuits against the State of Florida and its employees, as well as employment lawsuits against the State of Florida and its employees.

8.     Plaintiff's job required her to make difficult decisions for the State of Florida concerning the adjudication, adjusting, and resolution or non-resolution of claims, most of which had no damages caps and sometimes resulted in payments made to claimants even as high as $18 million. In other words, Plaintiff's job required her to limit the financial exposure for the State of Florida for claims asserted against the State of Florida and its employees.

9.     Plaintiff's position was not a position of policymaking or confidentiality. Moreover, Plaintiff's position at DFS at the time of her termination was not a policymaking position that required her to share the same political viewpoints, positions on policy, or otherwise agree and support Patronis' politics. In other words, allegiance to Defendant Patronis' political party was not necessary for

effective performance in Plaintiff's position. In fact, Plaintiff's position should be conducted without regard for political beliefs or political party.

10.     Plaintiff received superior job performance reviews up to and through the date of her constructive discharge.

### DFS MISCONDUCT RELATED TO PLAINTIFF TAUL

**Despite Plaintiff's protests, DFS permitted politics to drive the adjudication and resolution of claims and litigation against the State of Florida**

11.     Plaintiff's approach to her job signaled to DFS and its employees that she approached the cases under her review in a way that appropriately balanced the risks in a fiscally conservative manner, yet also discharged her duties as a risk manager for the various state agencies to ensure that at least one fair offer to resolve each case was made at some point before trial based on the objective facts of that case.

12.     Plaintiff voiced her concern on numerous occasions that her division was not faithfully executing their jobs and fiduciary duty to the taxpayers if DFS did not make at least one good faith offer to resolve the cases based on the objective facts and potential risks of adverse jury verdicts. Moreover, Plaintiff's concerns were especially serious in that when Plaintiff voiced her concerns to the DFS claims committee it was because counsel retained to represent the State of Florida and its employees strongly recommended that those particular cases be resolved because the risk of loss and harm to the taxpayers was especially great. Indeed, Plaintiff was

particularly outspoken at the August claims committee where the counsel representing the State of Florida was strongly recommending settlement and making a significant offer to resolve the particular case, especially since DFS had made no real good faith effort to resolve the case. The Claims Committee at the August meeting consisted of Molly Merry, the Division of Risk Management Director, Robin Delaney, the Assistant Director of Risk Management, and Marc Stemle, the Chief Of Property and Liability Claims, Kelly Hagenbeck, Risk Management Program Administrator for the South Region Tort section, Brian McGrane, the North Region Tort Risk Management Program Administrator, Stephen Hall, Risk Management Program Specialist, Cassandra Johnson, Risk Management Program Specialist, and Plaintiff.

13. Plaintiff's concerns included that too many times political whims where negatively affecting and influencing cases and resulting in payouts that were far greater payout and damages than could have been. In other words, generally, had these cases not been subject to politics, these cases could have been settled much sooner and for a fraction of the settlement amount.

14. Indeed, on at least one occasion, despite the fact that the case should have been settled, the case was not settled because DFS was told, presumably by Corrections and/or the Executive Office of the Governor, not to settle the case in an election year.

## DFS Chief of Property and Liability Claims Meets with Plaintiff and Instructs Her to Change Evaluations for a DFS Employee

15. Part of Plaintiff's job duties was to evaluate her subordinate employees that reported to her. In August of 2018, Plaintiff was required to complete her employee job evaluations prior to traveling on a pre-planned vacation.

16. For one particular employee, Cecelia Bradley, Plaintiff initially completed an evaluation sheet for her that resulted in a 3.1 average. Subsequently and prior to the evaluation for Ms. Bradley being finalized, Plaintiff was instructed to amend her evaluation to score Ms. Bradley lower because DFS was looking to terminate Ms. Bradley. Plaintiff amended the evaluation as instructed, resulting in a less than satisfactory evaluation score. Plaintiff did not necessarily disagree with the evaluation as amended by her, however, the evaluation was written in a much more negative light than necessary at the request Plaintiff's superior to further DFS's agenda in terminating Ms. Bradley.

17. During the meeting with Plaintiff's supervisor where Plaintiff was asked to change the evaluation of Ms. Bradley, Plaintiff was never told that she did a poor job at managing Ms. Bradley. Plaintiff's supervisor did not express and displeasure with Plaintiff's job performance.

18. Subsequently, Plaintiff notified her supervisor that she had completed all of her employee evaluations and that she was heading off to vacation. Plaintiff's supervisor told her to have a fun time. Plaintiff's supervisor also told her that the last

day to complete her evaluation was the date she returned from her vacation and that he would conduct that meeting with her when she returned the following Monday.

**Plaintiff was invited to a political fundraiser for Defendant Patronis and was told to make sure she brings a check**

19. Defendant Patronis is currently running for the position of Chief Financial Officer of the State of Florida, a cabinet position. Defendant was previously appointed to the position by Governor Rick Scott.

20. On or about August 20, 2018, Defendant Patronis was scheduled to have a fundraiser in Tallahassee for his campaign for CFO.

21. Prior to the fundraiser, in approximately July or August of 2018, Plaintiff received a phone call on behalf of the CFO inviting Plaintiff to the fundraiser and soliciting her to bring a campaign contribution for her employer, Defendant Patronis. The nature of the request for a check did not suggest it was optional. Indeed, the request strongly suggested that the check was necessary and required, because "people need to bring a check."

22. Plaintiff was taken aback by this request as she had never previously been approached by any of the CFOs since 1994 soliciting campaign checks for the CFO, her boss. Plaintiff was particularly disturbed by this request because Defendant Patronis is a republican and the Plaintiff is a registered democrat. The request was especially troubling to Plaintiff as she did not particularly agree with Defendant Patronis's political agenda.

7

23. Plaintiff was scheduled to be on leave on the day of the fundraiser. However, despite being in Tallahassee on the date of the fundraiser for Defendant Patronis, Plaintiff refused to attend the seemingly mandatory fundraiser because of her differing political views. Indeed, Plaintiff also refused to make the campaign contribution to Defendant Patronis because of Plaintiff's differing political views.

### One week after refusing to attend a campaign fundraiser for Defendant Patronis, on Plaintiff's first day back from her vacation, she was constructively discharged

24. Plaintiff returned to work from her vacation one week after the campaign fundraiser for Defendant Patronis.

25. Upon her return, Molly Merry informed Plaintiff that if she didn't resign by the next morning, she would categorized as a terminated employee effective immediately. Plaintiff resigned under duress and was constructively discharged.

26. Plaintiff was terminated by DFS for refusing to attend Defendant Patronis' campaign fundraiser and donate to his campaign. The link of Plaintiff's termination and Defendant Patronis' campaign is Defendant Patronis. In other words, when Plaintiff did not attend Defendant Patronis' fundraiser, sign the attendance sheet, and make a campaign contribution, Defendant Patronis, either directly or through others, made the decision to terminate Plaintiff.

27. Alternatively, other DFS employees carried out Defendant Patronis' wish or decision to terminate Plaintiff for refusing to attend his campaign fundraiser and make a campaign contribution. Plaintiff intends to amend her complaint to include additional individuals as defendants once discovery is conducted and the identity of those individuals becomes known.

28. Plaintiff's termination violated her civil rights and First Amendment rights to free speech and association.

## **COUNT I**

29. Plaintiff Taul realleges reincorporates paragraphs 1 through 28 herein.

30. This is an action pursuant to 42 U.S.C. § 1983 by Plaintiff Taul against Defendant Patronis for the violation of Plaintiff's First Amendment rights. At all material times hereto, Defendant Patronis was acting under color of state law.

31. Defendant Patronis has violated Plaintiff Taul's constitutional rights by retaliating against Plaintiff Taul for her speech and right to not associate with Defendant Patronis and to not make and campaign contribution to his campaign. Plaintiff Taul associates with a different political party and does not share the same beliefs as Defendant Patronis. As a result of associating with a political party different than that which Defendant Patronis is a member and not associating with Defendant Patronis, Defendant Patronis retaliated against Plaintiff Taul by constructively discharging her from her employment with DFS as the Risk

9

Management Program Administrator. Such association by Plaintiff Taul and refusal to politically associate with Defendant Patronis was outside the course and scope of Plaintiff's employment.

32. Plaintiff was denied continued public employment because of her political beliefs and her refusal to associate with Defendant Patronis, adopt his political beliefs, and make a contribution to his campaign. Public employment may not be conditioned upon requirements that violate constitutionally protected interests. Plaintiff's continued public employment became conditioned on her patronage of Defendant Patronis, and her refusal to support the Defendant Patronis, his political party, and his political views.

33. Political beliefs and association constitute the core of those activities protected by the First Amendment.

34. Defendant Patronis had fair notice of the case law prohibiting the actions taken by him against Plaintiff. It is well settled that neither a state nor its employees can condition employment on a basis that infringes the employee's constitutionally protected interest in freedom of expression.

35. Defendant Patronis' conduct was the direct and proximate cause of Plaintiff's injuries and damages.

36. The law is well-settled in that Defendant Patronis's had notice that the actions he took were unlawful. Even if the law were not well-settled, Defendant

Patronis' conduct lies so obviously at the very core of what the First Amendment protects that the unlawfulness of Defendant Patronis' conduct was readily apparent to Defendant Patronis, notwithstanding the lack of case law.

37. Defendant Patronis' retaliation against Plaintiff included Plaintiff losing her job with DFS. Plaintiff has suffered stigma, loss of employment, loss of income, loss of attorney's fees, fringe benefits, loss of reputation and career, humiliation, embarrassment, mental and emotional distress and anguish, loss of self-esteem, and harm to personal and business reputation. These damages have occurred in the past and can reasonably be expected to be incurred in the future.

38. Plaintiff requests all compensatory damages allowable pursuant to 42 U.S.C. § 1983, costs, attorneys' fees pursuant 42 U.S.C. § 1988 and any further relief this Court deems proper, just, and allowable by law.

39. Because of the unlawful retaliation by Defendant Patronis against Plaintiff for exercising her constitutional rights, Plaintiff has been compelled to retain the services of counsel to represent her in the civil damages case and Plaintiff is obligated to pay these lawyers reasonable attorney's fees for their services. Plaintiff is entitled to attorney's fees under 42 U.S.C. § 1988.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all counts.

Respectfully submitted,

>The Law Offices of
>STEVEN R. ANDREWS, P.A.
>822 North Monroe Street
>Tallahassee, Florida 32303
>T: (850) 681-6416 / F: 681-6984
>
>*/s/ Ryan J. Andrews*
>RYAN J. ANDREWS (FBN 0104703)
>JOHN M. VERNAGLIA (FBN 1010637)
>STEVEN R. ANDREWS (FBN 0263680)
>Service: service@andrewslaw.com
>*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic mail on this 6th day of March, 2019, to the following:

>Brian C. Keri
>The Law Offices of Brian C. Keri, PA
>3375-H Capital Circle NW, Suite 4
>Tallahassee FL 32308
>brianckeri@earthlink.net
>*Attorney for Defendant*

>  */s/ Ryan J. Andrews*
>RYAN J. ANDREWS